UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARQUARION HENDERSON,

Plaintiff,

v.

Case No. 22-cv-12322
Honorable Linda V. Parker

JULIE PALMER, et al.,

Defendants.
_________________________________/

**OPINION AND ORDER: (1) GRANTING IN PART AND DENYING IN PART MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT MAGNUSON AND EDGINGTON'S MOTION FOR SUMMARY JUDGMENT; (3) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED PLEADING WITHIN THE COURT'S CONSTRUENCE; AND (4) DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME**

Mr. Darquarion Henderson initiated this pro se civil rights lawsuit on September 30, 2022, against the Michigan Department of Corrections ("MDOC") and various individual defendants. This Court referred the case to Magistrate Judge Anthony P. Patti for all pretrial proceedings, including a hearing and determination of all non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation ("R&R") on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or an R&R on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 55.) Relying on Judge Patti's R&Rs this

Court issued an Opinion and Order Denying with Prejudice Plaintiff's Motion for the Court to Defer Decision on MDOC's Motion for Summary Judgment and Extending Time to File Responses to Motions for Summary Judgment. (ECF No. 136.)

Presently before the Court are Defendants' Bean, Droste, Frangedakis, Greason, Hall, Kinner, McInnis, Montgomery, Palmer, Perry, Qualls, Spaulding, and Simmet's ("MDOC Defendants") and Defendants' Danielle Magnuson and Colleen Edgington Motions for Summary Judgment. (ECF Nos. 129, 131.) These motions are fully briefed. (ECF Nos. 130, 134, 137, 138, 139, 140, 141, 142.)

Relatedly before the Court is Plaintiff's Motion for Leave to File an Amended Pleading. (ECF No. 142.) Because Plaintiff's Motion addressed drafting issues and was accompanied by an amended Brief supporting Plaintiff's Response to MDOC Defendants' Motion for Summary Judgment, this Court grants Plaintiff's Motion to Amend, but construes the attached brief as his proposed amendment. (*Id.*) This construal allows Henderson to amend his pleading in light of the alleged insufficiencies described in MDOC Defendants' Reply to Plaintiff's Response to MDOC Defendants' Motion for Summary Judgment. (ECF No. 139.)

Finally, this Court will dispense with Plaintiff's Emergency Motion for Extension of Time. (ECF No. 145.) Finding the facts and legal arguments

sufficient in the parties' briefs, the Court dispensed with oral argument pursuant to Local Rule 7.1(f).

For the reasons that follow, this Court grants in part and denies in part the MDOC Defendants' Motion for Summary Judgment; grants Defendant Edgington and Magnuson's Motion for Summary Judgment, grants Plaintiff's Motion for Leave to File an Amended Pleading and dismisses Plaintiff's Motion for Extension of Time.

## I. Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248). The non-movant's

evidence generally must be accepted as true and "all justifiable inferences" must be drawn in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255. In addition, a verified complaint carries the same weight as an affidavit for evidentiary purposes when evaluating a summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

## II. Background

### a. Procedural History

Plaintiff filed the instant lawsuit in pro per in September of 2022, against the Michigan Department of Corrections ("MDOC") and various individual defendants. (ECF No. 1.) The undersigned referred this case to Magistrate Judge Patti in June of 2023 "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 22.) Since then, this Court has adopted several R&Rs from Magistrate Judge Patti, addressing motions for summary judgment from both parties. (ECF Nos. 95, 144.) Earlier this month, this Court issued an Order vacating its previous referral to Magistrate Judge Patti.

On October 1, 2025, Edgington and Magnuson together and the MDOC Defendants filed separate Motions for Summary Judgment. (ECF No. 129, 131.) On January 21, 2026, Henderson filed a Motion for Leave to File an Amended

Pleading and on March 30, 2026, he filed an Emergency Motion for an Extension of Time. (ECF Nos. 142, 145.) (ECF No. 149.) The Court now turns to these motions pending before it.

b. **Chart of Allegations**

Plaintiff's lengthy, verified complaint strings together a series of alleged events occurring over a six-month time period. (ECF No. 54.) In a previous motion for summary judgment, the MDOC Defendants provided a chart, attempting to organize Plaintiff's many allegations into discernable events. (ECF No. 70, PageID.565-569.) Plaintiff does not take issue with the organization of his allegations, and the Court adopts them herein for consistency and clarity.[1]

| No. | Date(s) | Def(s). Involved | Allegations | Compl. ¶, PageID. |
|---|---|---|---|---|
| 1 | 4-24-22 | Palmer | Around noon, he told Palmer that he was experiencing chest pains, but Palmer did not notify healthcare. | ¶¶ 18–19, PageID.479 |
| 2 | 4-24-22 | Palmer, Simmet, Perry, Frangedakis, Magnuson, Bean | Around 1pm, Palmer, Simmet, Perry, Frangedakis, Magnuson, and Bean found | ¶¶ 21–22, PageID.479 |

[1] Rather than the amended complaint, Defendants cited the original complaint (as corrected, at ECF No. 16) in many of their citations. However, the amended complaint did not fundamentally alter the paragraph numbers or verbiage, and Magistrate Judge Patti has updated the citations to the amended complaint, which this Court has accepted.

| | | | | |
|---|---|---|---|---|
| | | | him unresponsive in his cell but left him there. | |
| 3 | 4-24-22 | Palmer, Simmet | Shortly after 1pm, Palmer and Simmet sexually assaulted him while he was in and out of consciousness. | ¶¶ 23–25, PageID.479 |
| 4 | 4-24-22 | Magnuson, Bean | Shortly before 3pm, Magnuson and Bean checked in on him, told the unit officers that he was faking, and sent him to segregation. | ¶¶ 26–27, PageID.479480 |
| 5 | 5-20-22 | Simmet | Simmet threatened him with harm if he did not sign off on the PREA complaint he made on 4-2622 against Palmer and Simmet | ¶ 30, PageID.480 |
| 6 | 6-5-22 | Magnuson, Bean, Simmet | Around 1:30pm and after he told staff that he was experiencing | ¶¶ 37–38, PageID.481 |

| | | | | |
|---|---|---|---|---|
| | | | leg weakness and numbness which forced him to crawl, Magnuson and Bean did not alert healthcare and Simmet threatened him. | |
| 7 | 6-5-22 | Qualls, McNeal | Around 2:30pm, Qualls and McNeal struck and kicked him unconscious when he was on the floor of his cell due to his leg numbness. | ¶¶ 39–41, PageID.481 |
| 8 | 6-5-22 | Inger, Diop, McNeal, Hernandez | Around 3:40pm, Inger, Diop, McNeal, and Hernandez assaulted him due to his actions against Simmet. | ¶ 42, PageID.481 |
| 9 | 6-5-22 | McInnis, Douglas | On the night shift, McInnis and Douglas refused to give him a proper examination because he was "faking." | ¶ 45, PageID.482 |
| 10 | 6-6-22 | Simmet, Edgington | Around 7am, Edgington refused to | ¶¶ 46–49, PageID.482 |

| | | | | |
|---|---|---|---|---|
| | | | provide medical care and accused him of faking, apparently at Simmet's behest. | |
| 11 | 6-6-22 | Simmet | Around 10am, Simmet had other prisoners carry him up to his cell in a wheelchair but took the wheelchair away once he was in his cell. | ¶ 50, PageID.482 |
| 12 | 6-7-22 | Unknown nurse | Around 8am, a nurse checked in on him because he was still crawling and accused him of malingering. | ¶ 51, PageID.482 |
| 13 | 6-5 to 6-8-22 | Unspecified | He did not receive medical attention for his leg numbness, which forced him to crawl around, sleep on the floor, and to urinate and defecate on himself. | ¶ 53, PageID.483 |
| 14 | 6-20-22 | Montgomery, Droste | Montgomery and Droste harassed him in retaliation | ¶¶ 58–60, PageID.483 |

| | | | | |
|---|---|---|---|---|
| | | | for his grievance against Qualls, and Montgomery issued him a retaliatory misconduct ticket. | |
| 15 | 6-20-22 | Montgomery | Montgomery issued him a retaliatory misconduct ticket. | ¶ 61, PageID.484 |
| 16 | 7-16-22 | Qualls, Montgomery, Spaulding | Qualls and Montgomery destroyed some of his legal mail and confiscated his wheelchair; Montgomery and Spaulding then ordered him to hand over his wheelchair roller and then ordered him to come out of his cell, whereupon they threatened him and his legs gave out. | ¶¶ 62–67, PageID.484 |
| 17 | 7-16-22 | Qualls | Qualls issued him a retaliatory misconduct ticket. | ¶ 68, PageID.484 |

| | | | | |
|---|---|---|---|---|
| 18 | 7-16-22 | Spaulding | Spaulding issued him a retaliatory misconduct ticket for possession of stolen property. | ¶ 69, PageID.484 |
| 19 | 7-16-22 | Qualls, Montgomery, Spaulding | Qualls, Montgomery, and Spaulding returned to his cell and threatened him with their tasers. | ¶¶ 70–73, PageID.484 |
| 20 | 7-16-22 | Qualls | Qualls issued him a retaliatory misconduct ticket for being out of place. | ¶ 74, PageID.485 |
| 21 | 8-7-22 | T. Hall, Montgomery | T. Hall subjected him to excessive force and Montgomery threatened him over his grievances. | ¶¶ 75–80, PageID.485 |
| 22 | 8-7-22 | T. Hall, Droste | T. Hall and Droste each issued him retaliatory misconduct tickets. As a result of the tickets, he was kept in segregation for a prolonged | ¶¶ 81–91, PageID.486 |

| | | | | |
|---|---|---|---|---|
| | | | period of time which resulted in him being suicidal, and he was denied parole. | |
| 23 | 10-3-22 | Kinner, Greason | Kinner and Greason did not provide him with policymandated relief from being in continuous segregation. | ¶¶ 83–84, PageID.485 |

c. **Additional Factual Background**

While respecting Henderson's version of events in his verified complaint, there are certain elements of the record that conflict with his narrative. The MDOC health records for Henderson, submitted by both the MDOC Defendants, and Edgington and Magnuson, show that he received significantly more treatment than he claimed in his complaint. (ECF Nos. 129-3, 129-4, 131-3.) Henderson also testified over a Zoom deposition contradicting his allegation against Edgington that she was the one who deprived him of a wheelchair accommodation. (ECF No. 131-4, PageID.1743.) These additional facts will inform the Court's analysis.

III. **Applicable Law and Analysis**

"As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Id*., at 520-521, 92 S.Ct. at 596." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

**a. Deliberate Indifference Claims (Counts 1, 2, 4, 6, 9, and 10)**[2]

Henderson alleges that the MDOC Defendants and Defendants Edgington and Magnuson were deliberately indifferent to his medical needs and denied him access to treatment without justification. (ECF No. 54, PageID.482.) The Eighth Amendment bans any punishment that involves the unnecessary and wanton infliction of pain. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). It is well-established that deliberate indifference to serious medical needs constitutes the unnecessary and wanton infliction of pain. *See Estelle*, 429 U.S. at 104-105.

To state a claim for deliberate indifference to a serious medical need, a plaintiff must satisfy a two-prong test. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the plaintiff "must establish an objective element: that the prisoner

[2] Having considered and denied Henderson's Motion for Partial Summary Judgment (ECF No. 101), this Court will not reconsider those arguments when evaluating the Defendants' Motions for Summary Judgment, despite Henderson's request that it do so in his Response. (ECF Nos. 138, 143, 144; ECF No. 137, PageID.1856.)

'is incarcerated under conditions posing a substantial risk of serious harm.'" *Beck v. Hamblen Cnty., Tenn.*, 969 F.3d 592, 600 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Second, the plaintiff "must establish a subjective element: that the government official subjectively knew of this risk of harm." (*Id.* (citing *Farmer*, 511 U.S. at 837).

To evaluate the first prong, the Sixth Circuit has defined "a [sufficiently serious] medical need . . . as one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

When treatment is provided, plaintiffs bear the burden of showing that the treatment was "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005). Mere disagreement with testing and treatment received does not rise to the level of an Eighth Amendment violation. *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018).

In addition, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Indeed, "to prove grossly inadequate care, . . . courts generally require [**prisoners**]

to introduce medical evidence, typically in the form of expert testimony." *Rhinehart*, 894 F.3d at 740-43.

Similarly, to prove a delay in care harmed a plaintiff, a prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004) (citing *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)).

However, if plaintiff's claims arise from an injury, *Blackmore* requires that the injury be:

> 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.

*Blackmore*, 390 F.3d at 899. As to the second prong of *Farmer*, a plaintiff must allege more than mere negligence. *Farmer*, 511 U.S. at 835. The conduct must "demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). However, "a prisoner is not required to show that he was literally ignored by the staff to prove an Eighth Amendment violation, only that his serious

medical needs were consciously disregarded." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014).

On Count 1, Henderson alleges that around noon, Palmer deliberately ignored him while he was having chest pains. (ECF No. 54, PageID.479.) The record shows that at 1:20 p.m., several healthcare officers responded to Henderson's cell. (ECF No. 130-3, PageID.1442.) Sixth Circuit precedent holds that oral complaints of chest pain, without any other sign of distress, do not stack up to the cumulative signs of a serious illness. *Est. of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005); *see also Richardson v. Falk*, 184 F.4th 833, 843-44 (6th Cir. 2026). Accordingly, absent medical evidence demonstrating the detrimental effect of the delay, this Court will grant summary judgment on Count 1.

This court will address Count 2 in three parts, one considering the claim against Nurse Magnuson, one considering the claim against the Correctional Officers under "MDOC Defendants," and the last considering Defendant Bean.

Henderson does not allege that Magnuson consciously disregarded his needs, merely that he disagrees with Magnuson's treatment outcome. (ECF 54, PageID.479.) Magnuson argues that Henderson fails on the subjective prong of deliberate indifference. (ECF No. 131-1, PageID.1607-08.) Even liberally construing Henderson's arguments, he acknowledges that several medical personnel examined and treated him. (ECF No. 138, PageID.1877.) Henderson

merely disliked the outcome of the treatment. (*Id.*) As noted above, mere disagreement with a treatment plan does not rise to the level of an Eighth Amendment claim and there is not a genuine issue of material fact for Henderson's claim against Magnuson on Count 2. *See Rhinehart*, 894 F.3d at 740.

This Court next turns to Count 2 and the Correctional Officers. Henderson alleges that Defendants Palmer, Simmet, Perry, and Frangedakis found him unresponsive and did not provide him with adequate medical care. (ECF No. 54, PageID.478-79.) However, in the next line of his complaint, Henderson acknowledges that almost immediately after his chest pains, Defendants Bean and Magnuson arrived to provide a medical examination. (*Id.*) Henderson also does not establish how Defendants could have brought in medical care faster.

While the Sixth Circuit has not strictly established what is a reasonable time within which to provide medical care for a prisoner's obvious, serious injury, the near immediate presence of medical personnel almost certainly falls within that time. *See Kimbrough v. Core Civic*, No. 1:19-CF-00048, 2019 WL 2501558, [*3] (MD Tenn, June 17, 2019). With no apparent delay in treatment, even liberally construing Henderson's complaint, there does not appear to be supporting allegations for a claim against the Correctional Officers.

Now, this Court will finally turn to Defendant Bean. Similar to Magnuson and Count 2, Henderson accuses Defendant Bean of not providing adequate

treatment. (ECF No. 54, PageID.479.) However, he does not provide medical evidence or other material on how the treatment was inadequate, other than disagreeing with the outcome. (*Id.*) As stated above, mere disagreement with an outcome is not sufficient to establish an Eighth Amendment claim. *Rhinehart*, 894 F.3d at 740. Accordingly, this Court will grant summary judgment on Count 2 for all Defendants.

Turning to Count 4, Henderson accuses Magnuson and Bean of deliberate indifference because they told the supervising officers that Henderson was faking and recommended sending him to segregation. (ECF No. 54, PageID.479-80.) The record shows that, before doing so, Magnuson took his oxygen, heartrate, and other vitals and diagnosed no distress or breathing impairments. (ECF No. 131-3, PageID.1667.) Henderson was ultimately taken to segregation and drug tested. (ECF No. 54, PageID.480.)

Plaintiff has not alleged inadequate care beyond not receiving the specific accommodations he wanted. (ECF No. 138, PageID.1877.) As in Count 2, disagreement with an outcome is insufficient to establish a deliberate indifference claim under the Eighth Amendment. *Rhinehart*, 894 F.3d at 740. And the Defendants examined Henderson and requested a drug test which could be a reasonably appropriate treatment so as to ensure Henderson was not experiencing a drug overdose. (ECF No. 130, PageID.1410.) Therefore, without repudiating

medical evidence, Henderson has failed to allege sufficient facts to state a claim against Magnuson or Bean on Count 4.

On Count 6, Henderson repeatedly alleges that Magnuson denied him reasonable accommodation and adequate medical care. (ECF No. 138, PageID.1876.) Henderson acknowledges that Magnuson examined him but claims that she refused to provide aid after becoming aware Henderson appeared unable to walk. (*Id*, PageID.1877.) However, having acknowledged that he was examined, Henderson omitted that, per the medical record and following an examination, Magnuson provided a treatment plan of a "neuro check . . . at 0300" and encouragement to rest, take medication as prescribed, and hydrate. (ECF No. 131-3, PageID.1639.)

The seriousness of leg weakness and numbness are not obvious to a layperson and cannot be discerned without medical proof. *Blackmore*, 390 F.3d at 899. Accordingly, it is incumbent on Henderson to demonstrate by medical evidence the inadequacy of the care provided. *Rhinehart*, 894 F.3d at 740-43. He has not done so. (ECF Nos. 54, 137.) Absent medical evidence showing the care was inadequate, this Court will grant summary judgment for Defendants on Count 6.

On Count 9, Henderson claims that McInnis did not give him adequate care, a proper examination, or a reasonable accommodation when checking on

Henderson during night shift. (ECF No. 54, PageID.482.) The record shows that McInnis and Douglas did check on Henderson and, after an examination, referred him to a medical provider with more training who found him in no medical distress. (ECF No. 130-3, PageID.1458; ECF No. 130-4, PageID.1476.)

Henderson may disagree with this treatment outcome, but that alone does not rise to the level of an Eighth Amendment claim. See *Rhinehart*, 894 F.3d at 740. Instead, similar to Count 6, to survive the motion for summary judgment, Henderson would need to plead medical evidence of how his treatment was inadequate. *Id*. at 740-43. He has not done so. (ECF Nos. 54, 137.) Accordingly, this Court will grant summary judgment on Count 9.

Count 10 follows similar analysis to Counts 6 and 9. Henderson alleges Edgington failed to provide adequate medical care. (ECF No. 138, PageID.1866.) However, Edgington examined Henderson and subsequently referred him to another provider for same day or following day care. (ECF No. 131-3, PageID.1634-35.) Henderson also admitted in testimony that Edgington left him with a wheelchair to help accommodate any limited mobility and it was not Magnuson who took his chair later on. (ECF No. 131-4, PageID.1735, 1743.) Henderson appears to disagree with this treatment outcome but does not explain or provide evidence why it was sub-standard. (ECF No. 54, 138.) Mere

disagreement on treatment fails to meet the *Rhinehart* standard described above. *Rhinehart*, 894 F.3d at 740-43.

However, Henderson goes slightly farther than in Count 6, alleging that Edgington made conflicting statements in her medical report concerning the "Negative Babinski Reflex." (ECF No. 138, PageID.1877.) However, Henderson's assertions, that Edgington's diagnoses conflicted with her statements, are also not supported by medical analysis or expert testimony. (*Id.*) Therefore, absent medical evidence to the contrary, this Court grants summary judgment for Defendants on Count 10.

In summary, this Court will grant summary judgment on Counts 1, 2, 4, 6, 9, and 10.

**b. Sexual Assault Claim (Count 3)**

The MDOC Defendants' basis for moving for summary judgment on Count 3 is that the claim of sexual assault was investigated and found to be false by the Deputy Warden of the Macomb Correctional Facility, Bridget Spencer. (ECF No. 130, PageID.1410-11.)

Under *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013), this Court must only give an agency's factfinding the same preclusive effect it would be entitled to in State courts if: (1) the agency was acting in a judicial capacity; (2) the

agency resolved a disputed issue of fact that was properly before it; and (3) the parties had adequate opportunity to litigate.

In this case, the investigation appears to have consisted of two interviews, one with Magnuson and one with Henderson. (ECF No. 130-7, PageID.1508-12.) There is no evidence of a judicial proceeding nor was either party given an opportunity to cross-examine the other party or submit additional evidence beyond their testimony. (*Id.*) Therefore, this Court need not treat the investigation or its results as preclusive because it was not a judicial proceeding nor did it provide Henderson adequate opportunity to litigate the dispute.

Defendants also raise Henderson's history of mental illness as a basis for summary judgment. (ECF No. 130, PageID.1410-11.) They point out that Henderson stated he "may have imagined" the incident. (*Id.*) Mental illness can certainly be relevant to a party's credibility, but it is up to the courts to consider whether that history should be admissible. *Boggs v. Collins*, 226 F.3d 728, 742 (6th Cir. 2000). In this instance, Henderson was only briefly unsure of what happened because he was in and out of consciousness, and when he began to "bleed from his anus" the next day, he "knew something had happened to him." (ECF No. 130-7, PageID.1512.)

With that context and drawing all inferences for Henderson there is a genuine dispute of material fact whether the assault in question occurred. (ECF

No. 54, PageID.479.) Therefore, Defendants request for summary judgment on Count 3 is denied.

**c. Retaliation Claims (Counts 14, 15, 16-20, and 22)**

To establish First Amendment retaliation, Henderson must show that: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) . . . the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). This analysis is contextual, and the Sixth Circuit has established that prisoners "may be required to tolerate more than average citizens [] before an action taken against them is considered adverse" but that the adverse action does not need to be egregious. *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013).

On Count 14, Defendants Mongomery and Droste allegedly closed Henderson's door on him in retaliation for Henderson's grievance against Defendant Qualls. (ECF No. 54, PageID.483.) Defendants claim that because Henderson was only stuck in the door for five to ten seconds and the wheelchair protected him, he could not have suffered any substantial injuries. (ECF No. 130, PageID.1416.)

But Henderson alleged that the door closed on him, not on the chair. (ECF No. 54, PageID.484.) And even in the chair, his limbs could have extended beyond the chair's supposed protection, such that the closing doors crushed them, even within the short time given. Hence there is a genuine dispute of material fact over whether Henderson was injured by the closing prison cell doors and to what extent. (ECF No. 54, PageID.483; ECF No. 130, PageID.1415-16.) Accordingly, summary judgment is denied on Count 14.

On Count 15, Defendant Montgomery issued Henderson an allegedly retaliatory misconduct for Creating a Disturbance by sending prisoners to report a seizure. (ECF No. 54, PageID.483-84.) Henderson alleges that Montgomery threatened to write him "a million tickets" if he did not withdraw his grievance, alleging that Henderson's protected grievance may have been motivation for the misconduct citation. (*Id.*)

However, if a defendant shows that they would have taken the same action absent the protected activity, they are entitled to prevail on summary judgment. *Blatter*, 175 F.3d at 399. Defendants point to the prison logbook and Montgomery's declaration as proof that Montgomery had a non-retaliatory reason for issuing the misconduct ticket to Henderson. (ECF No. 130, PageID.1417.) However, the standard is not whether the Defendants "*could* have" taken the alleged action in the absence of Henderson's actions but also that "they *would*

have[.]" *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989); *see also Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002) (emphasis added) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)) ("To show causation, 'a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action *would not* have been taken' in the absence of the protected conduct.").

Accordingly, this Court can infer a genuine dispute over whether Montgomery would have issued the citation without Henderson sending prisoners to report his alleged seizure. Therefore, this Court will deny summary judgment on Count 15.

On Count 16, Defendants Qualls and Montgomery allegedly destroyed Henderson's legal mail and confiscated his wheelchair. (ECF No. 54, PageID.484.) Henderson claims they then ordered him to hand over his wheelchair roller and exit his cell, before threatening him when his legs gave out. (*Id.*)

While retaliation may be relatively easy to allege, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under §1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). In the original complaint, Henderson listed the destruction of mail and confiscation of his wheelchair under the heading "Retaliation Harassment" but did not draw a

connection with any underlying protected activity against which the MDOC Defendants were retaliating. (ECF No. 54, PageID.483-84.) Nor did Henderson allege protected behavior causing the retaliation in his later reply. (ECF No. 142, PageID.1940.)

Henderson did briefly mention the grievances as the cause of the behavior in his Amended Response. (ECF No. 137, PageID.1849.) However, conclusive allegations of retaliatory behavior without connected evidence are insufficient to fend off a summary judgment motion. *See Johnson v. Goodspeed*, No. 1:25-CV-760, 2025 WL 2311388, at *10 (W.D Mich. August 12, 2025). As there does not appear to be a genuine dispute that Henderson did not reach the first element of a First Amendment retaliation claim on Count 16, this Court will grant summary judgment on Count 16.

On Count 17, Defendant Qualls wrote Henderson an allegedly retaliatory misconduct for illegal possession of a book of prisoner passes. (ECF No. 54, PageID.484.) As in Count 16, Henderson alleges no underlying protected conduct causing the retaliation. (*Id*.; ECF No. 142, PageID.1933-42.) As such, this Court will grant summary judgment on Count 17.

On Count 18, Defendant Spaulding allegedly wrote Henderson a retaliatory misconduct for disobeying a direct order. (ECF No. 54, PageID.484.) As in Count 16, Henderson alleges no underlying protected conduct causing the retaliation.

(*Id.*; ECF No. 142, PageID.1933-42.) This Court will grant summary judgment on Count 18.

On Count 19, Defendants Montgomery, Qualls, and Spaulding allegedly came to Henderson's cell and pointed tasers at him, with Montgomery telling Henderson it was in his best interest to "throw out them grievances." (ECF No. 54, PageID.484.)

As in Count 15, the MDOC Defendants move for summary judgment claiming that there was a valid non-retaliatory explanation for the officers' actions. (ECF No. 130, PageID.1420.) Henderson has alleged that the threats and brandished tasers were because of his filed grievances. (ECF No. 54, PageID.484.) As in Count 15, Defendants must show that they would have come to Henderson's cell and pointed tasers at him even without his pending grievances. (*Id.*) Without further evidence resolving whether the officers acted because of Henderson's grievances, there remains a genuine issue of material fact. Therefore, this Court will deny summary judgment on Count 19.

On Count 20, Defendant Spaulding allegedly wrote Henderson a retaliatory misconduct ticket for Out of Place and Disobeying a Direct Order. (*Id.*, PageID.485.) Defendants move for summary judgment on the grounds that the claim as pled is insufficient. (ECF No. 130, PageID.1420-21.) Similar to the analysis of Counts 16, 17, and 18, Henderson made conclusive statements on the

ticket being retaliatory but failed to allege any connection to the protected grievances in question. (ECF No. 54, PageID.485; ECF No. 137, PageID.1849; ECF No. 142, PageID.1936.)

To survive on summary judgment, Henderson needed to at least allege how the grievances connected to Spaulding's misconduct ticket. Having not done so, there is not a genuine issue of material fact, and this Court will grant summary judgment on Count 20.

On Count 22, MDOC Defendants claim that Droste and Hall's misconduct tickets against Henderson merit summary judgment. (ECF No. 130, PageID.1429.) As on Count 21, the MDOC Defendants incorrectly claim that the ALJ findings preclude this claim. (*Id.*) But on Count 22, Defendants will still succeed as Henderson has failed to plead sufficient allegations to support a genuine dispute of material facts.

As stated above, conclusive statements of retaliative motive are insufficient to support a First Amendment retaliation claim. *Harbin-Bey*, 420 F.3d at 580. On this Count, Henderson never connects Droste and Hall's misconduct tickets to his filed grievances other than calling them "retaliatory misconduct[s]." (ECF No. 54, PageID.485-86; ECF No. 137, PageID.1849; ECF No. 142, PageID.1937.) Without a retaliatory cause, Count 22 cannot succeed on element three of what is

required for a First Amendment retaliation claim and, as such, this Court will grant summary judgment.

In summary, this Court will grant summary judgment on Counts 16, 17, 18, 20, and 22; and will deny summary judgment on Counts 14, 15, and 19.

d. **Verbal Harassment and Retaliation Claim (Count 5)**

Henderson alleges Defendant Simmet retaliated and harassed him for filing a grievance against him. (ECF No. 54, PageID.480.) Allegations of verbal harassment and threats are insufficient to state a civil rights claim under § 1983. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987). Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's constitutional rights. *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004). Thus, even taking Henderson's version of the events of May 20, 2022, as true, Henderson fails to allege sufficient facts to support Count 5 as an Eighth Amendment claim. (ECF No. 54, PageID.480.)

However, Count 5 may also qualify as a First Amendment retaliation claim. To the extent Count 5 is also a First Amendment retaliation claim, it is based on Simmet's alleged threats to harm Henderson unless he withdrew his grievance against Simmet. (ECF No. 54, PageID.480.) On the first element under *Blatter*, this count could succeed as Henderson pled that Simmet was retaliating for the PREA grievance, a protected process. (ECF No. 54, PageID.480.) On the second

element of *Blatter*, a reasonable jury could find that Simmet's threats might deter a person of ordinary firmness from continuing with their grievance. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009); *see also King v. Williams*, No. 12-15116, 2013 WL 4718335, [*3-4] (E.D. Mich. Sept. 3, 2013). Finally, on the third element, Henderson pled causation and filed another grievance in support of this concern. (ECF No. 54, PageID.480.) Accordingly, there are genuine issues of material fact for Count 5, to the extent it is a First Amendment retaliation claim, and this Court will deny Summary Judgment.

e. **Excessive Force (Count 21)**

Defendants also move for summary judgment on Henderson's excessive force claim. (ECF No. 130, PageID.1421.) An excessive force Eighth Amendment claim requires both a subjective and objective component. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). For the subjective component in an excessive force claim, "the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 7). The objective component requires the pain inflicted be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Defendant Hall points to an assault and battery misconduct hearing and report that he claims fall under *Peterson*. (ECF No. 130, PageID.1424-28.) Under

*Peterson*, an administrative law hearing's factual findings are preclusive if they meet four criteria: (1) the state agency acted in a judicial capacity; (2) the hearing officer resolved a disputed issue of fact properly before it; (3) the prisoner had adequate opportunity to litigate; and (4) the federal courts give this agency's factfinding the same preclusive effect as it would be entitled in State courts. *Peterson*, 714 F.3d at 912. On the first and fourth elements, a major misconduct hearing in a Michigan prison will satisfy them so long as the second and third elements are satisfied. *Id*. at 912-14.

On the second element, Henderson was properly before ALJ Eriksson on his assault and battery charge. (ECF No. 130-12, PageID.1531.) ALJ Eriksson found that Henderson was going dead weight, not suffering paralysis, when staff were trying to help him, that Henderson had to physically carried by the MDOC Defendants with his feet dragging, and that Henderson had made threatening comments to Defendant Droste as he was being escorted away. (*Id*., PageID.1533.) These are determinative issues on Count 21.

On the third element, Henderson had adequate opportunity to litigate the factual dispute. Henderson was given the chance to question staff witnesses and present his version of events. (*Id*. PageID.1534-35.) Henderson also requested a rehearing and subsequently lost his appeal. (ECF No. 130-14, PageID.1560-62.)

As all four elements are met, this Court will grant the fact findings of ALJ Eriksson preclusive effect on this Count. Accordingly, if Henderson physically resisted staff by intentionally going dead weight, then the force applied was administered in a good-faith effort to maintain discipline. Accordingly, there is not a genuine issue of material fact on the excessive force claim against Hall.

As for Henderson's claim against Montgomery, it appears to describe a separate event from the one in question. Henderson's complaint describes Montgomery's alleged threat on August 7, 2022, but refers to a grievance describing events on July 16, 2022, addressed in Count 9. (ECF No. 54, PageID.485; ECF No. 130-11, PageID.1523-25.) To the extent these events fall under Count 9, they are addressed above. As for the rest, because there is not a genuine issue of material fact on the excessive force claim, this Court will grant summary judgment on Count 21.

**f. The Segregation Claim (Count 23)**

Finally, the Eighth Amendment segregation claim will also fail under §1983. Henderson alleges that he was held in segregation longer than MDOC policy while pending transfer. (ECF No. 54, PageID.485.) Even if Henderson's allegations are true, "failing to follow proper procedures is insufficient to establish an infringement of a liberty interest[.]" *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir.

2008). Because Henderson's claims do not address a right under §1983, this Court will grant summary judgment on Count 23.

**g. Qualified Immunity**

Qualified immunity shields a government employee from personal liability and civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense gives such employees "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)) (quotations omitted).

The Court's analysis of qualified immunity consists of a two-step inquiry: (1) whether a constitutional right has been violated and (2) whether that right was clearly established. See *Pearson*, 555 U.S. at 232; *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016). Both prongs must be established for the claim to go before a jury. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) ("If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages."). While the Court must adopt the plaintiff's version of the facts when evaluating qualified immunity on a motion for summary judgment, the

plaintiff bears the ultimate burden of showing that a defendant is not entitled to immunity. *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014). The Supreme Court also makes clear that the plaintiff's version should not be adopted when the alleged facts are "blatantly contradicted by the record," such as a videotape capturing the events in question, "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The MDOC Defendants claim conclusively and with minimal analysis that because all counts should be dismissed, there is no constitutional violation for the Court to consider. (ECF No. 130, PageID.1432-33.) They do not address the second element. In contrast, Henderson responds conclusively to the Defendants' argument by repeating that his constitutional rights were violated, and therefore Defendants are not entitled to qualified immunity. (ECF No. 137, PageID.1868-69.)

Drawing all facts in favor of Henderson, the Defendants are not entitled to qualified immunity on Counts where they may have violated his established constitutional rights. For these Counts, for which this Court denies summary judgment, a reasonable jury may find the MDOC Defendants violated Henderson's First Amendment or Eighth Amendment rights. *Estelle*, 429 U.S. at 104-105; *Blatter*, 175 F.3d at 394. For the Counts where this Court grants summary judgment, the qualified immunity argument is moot. Accordingly, Defendants'

Motion for Summary Judgment is denied, to the extent it is based on the grounds of qualified immunity.

h. **Emergency Motion for an Extension of Time**

Henderson also filed a Motion for an Extension of Time in light of a new prison policy requiring that all incoming legal mail contain a QR code. (ECF No. 145.) Henderson explained that this policy prevented him from responding to motions, reports, or opinions filed since the new policy went into effect on January 5, 2026. (*Id.*) This would impact Henderson's time to respond to Judge Patti's R&R of January 31, 2026; and this Court's Opinion and Order of March 3, 2026. (ECF No. 143, 144.)

However, generally, interlocutory rulings like a denial of summary judgment are not immediately appealable, and parties must wait for a final ruling before appealing. *Ashford v. Univ. of Michigan*, 89 F.4th 960, 968 (6th Cir. 2024). This means that Henderson already has until the conclusion of this case to consider his response to opinions filed since the new mail policy went into effect. Beyond the order in question, this Court does not see a pending motion that would warrant an extension of time.

In addition, the Prison Mailbox Rule deems that a pro se prisoner files on the date he hands his filing over to prisoner officials for mailing to the court, granting Henderson additional leeway in his deadlines for filing. *Brand v. Motley*, 526 F.3d

921, 925 (6th Cir. 2008). Henderson may also request additional time to respond to a specific future motion if there are extenuating circumstances he failed to mention here. Therefore, Henderson's Emergency Motion for an Extension of Time is denied.

## IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that MDOC Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is granted on Counts 1, 2, 4, 9, 16, 17, 18, 20, 21, 22, and 23, and denied on Counts 3, 5, 14, 15, and 19;

**IT IS FURTHER ORDERED** that Defendant Edgington and Magnuson's Motion for Summary Judgment is **GRANTED** and Defendants Edgington and Magnuson are dismissed as parties to this lawsuit;

**IT IS FURTHER ORDERED** that Plaintiff Henderson's Motion for Leave to File an Amended Pleading is **GRANTED TO THE EXTENT THE BRIEF ATTACHED TO THE MOTION IS ACCEPTED AS AN AMENDED PLEADING**;

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Motion for an Extension of Time is **DENIED**;

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 29, 2026

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 29, 2026, by electronic and/or U.S. First Class mail.

s/R. Thieme
Case Manager